## Yeager v. Yeager, Appellant.

Argued November 12, 1947. Before RHODES, P. J., HIRT, DITHRICH, ROSS, ARNOLD and FINE, JJ. (RENO, J., absent.)

*Challen W. Waychoff,* with him *A. J. Marion* and *Smith, Marion & Balaban,* for appellant.

*John I. Hook,* with him *Scott & Hook, for appellee.*

OPINION BY ARNOLD, J., March 8, 1948:

The master recommended a divorce on the ground of indignities and the court below dismissed exceptions and entered a decree. The wife-respondent appealed.

The parties were both residents of Greene County, Pennsylvania, and were married in 1916. Because of respondent's conduct the libellant withdrew from their common home on December 21, 1944, both parties being then about fifty-three years of age. Three sons were born of the marriage, and at the time of the hearing were twenty-nine, twenty-seven and twenty-one years old. The youngest, Calvin C. Yeager, resided with his mother but testified on behalf of his father.

We have performed the duty of making a careful examination of the evidence and reaching our independent conclusion. The recommendation of the master, and the decree of the court, were entirely right and just. In fact, scarcely any other result could be reached.

The principal difficulties of the parties began in 1930 and were either coincidental with, or the result of, a schism in their church; the respondent withdrawing and affiliating with a different sect, and the libellant remaining with the old group. Libellant was thereafter janitor of his church and performed other church duties, such as superintendent of the Sunday School.

The respondent-wife constantly charged him with intimacies with women of his church. She made such charges not only to him and in the presence of their youngest son (who so testified), but to some of the women whom she had named. She plainly exhibited to everyone her belief in her husband's misconduct. This went on for a period of some ten years. After the separation she continued in the same way.

Prior to the separation she followed up these assertions by appearing at a church supper and standing behind his chair and crying, thus ostensibly demonstrating how ill-used she was, and making a public exhibition of her grief.

She frequently followed him as he went along the street. Her explanation that these instances "just happened" is not convincing. She complained to him, and

in the presence of their son, that when he went to ring the church bell (his duty as janitor), it was for the purpose of meeting women, and she would then follow him to the church. When a sister was ill in bed, she accompanied him to the house, but upon arrival refused to enter. While he was inside she kept sounding the automobile horn. At home she mocked him and laughed at him.

We do not propose to point out each instance of her misconduct, which certainly constituted an intentional course of conduct on her part. She deliberately and intentionally so acted, for the express purpose of humiliating and degrading the libellant in the community in which they lived.

As to many of these instances she made no denial, although sometimes professing a loss of memory. She offered no proof that her husband was ever talked about concerning his conduct with other women. The events had to do with people composing a small church in a small community, where news would travel fast and where there must have been plenty of people who would have at least "heard talk" if it existed. She did seek to excuse her conduct because of bad health, but her evidence is not at all persuasive, nor did any physician corroborate her. She claimed that her conduct was for his own good, but she had no exclusive right to make such decision. She also averred that she loved her husband, but this must give way to the conclusion formed from her practically admitted acts: *Fogel v. Fogel,* 161 Pa. Superior Ct. 361, 54 A. 2d 844. From a careful examination of the evidence we conclude that the libellant was the injured and innocent spouse, and that the evidence was amply sufficient to sustain the decree, for it shows all of the elements which have been so frequently reiterated: habitual contumely, studied disdain, abusive language, settled hate and estrangement.

Decree affirmed.